UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                                                  (973) 645-4693
BANKRUPTCY JUDGE                                                                                 Fax: (973) 645-2606

**NOT FOR PUBLICATION**

April 10, 2006

**FILED**
JAMES J. WALDRON, CLERK

**APRIL 10, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Anthony T. Colasanti, Esq.
195 Fairfield Avenue, Suite 2A
West Caldwell, New Jersey 07006
***Attorney for Dr. John Mosolino***, ***Creditor***

Sweeney, Tom & Rumana, P.A.
Mary Tom, Esq.
17 Furler Street
Totowa, New Jersey 07512
***Attorneys for Debtor***

Re:     **Christine Maria Stromer**
        **Case No.  05-12503 (DHS)**

Page 2
April 10, 2006

Dear Counsel:

Before the Court is an objection by creditor, Dr. John Mosolino (hereinafter "Creditor"), to a claim of exemption for residential real property under 11 U.S.C. § 522(d)(1) made by Debtor, Christine Maria Stromer (hereinafter "Debtor"). The Debtor owns the property in question as tenants by the entirety with her husband, Alan D. Stromer. Specifically, the Creditor avers that the Debtor understated the fair market value of the home in the Schedules accompanying her bankruptcy petition.

This Court held a valuation hearing to determine the value of the real property located at 768 Warwick Turnpike, West Milford Township, New Jersey 07421 (hereinafter "the Property").

## I.   Statement of Facts[1]

On January 27, 2005 the Debtor filed a Chapter 7 bankruptcy petition. (*Debtor's Opposition to Creditor's Objection to Claimed Exemption*, p. 1-2) (hereinafter "*Debtor's Br.*"). In the Schedules filed with the bankruptcy petition, the Debtor listed her Property as having a value of $200,000 based upon a physical inspection conducted by a licensed real estate appraiser (*Debtor's Br.*, p. 2). The Debtor also listed secured claims against the Property totaling $149,276, asserting that both she and her spouse are fully liable for the entire amount of the mortgage. (*Debtor's Br.*, p. 2-3).

In his initial objection to the Debtor's claim for exemption, the Creditor estimated the fair market value of the Property to be approximately $250,000, with the Debtor's one-half interest being worth approximately $125,000. (*Creditor's Objection to Claimed Exemption*, March 21, 2005, p. 1)

---

[1] Preparation of this letter opinion included an audio review of the testimony given at the time of the hearing.

Page 3
April 10, 2006

(hereinafter "*Creditor's Br.*"). Subsequently, the Creditor ordered appraisal reports on the Property and asserts that the fair market value is actually between $325,000 and $350,000. (*Creditor's Letter Memorandum*, June 14, 2005, p. 1) (hereinafter "*Creditor's Memo*"). In addition, the Creditor objects to the Debtor's application of the entire $149,276 indebtedness against her one-half interest in the Property. (*Creditor's Br.*, p. 1). The Creditor cites Miller v. Sul (In re Miller), 299 F.3d 183 (3d Cir. 2002) for the proposition that the Debtor may only deduct one half of the outstanding mortgage indebtedness against her one-half ownership interest. (*Creditor's Memo*, p. 3).

At the commencement of the hearing, the parties agreed that In re Miller is the controlling precedent. As such, the Debtor's ownership interest in the Property is determined by dividing in half the full ownership interest in the Property and subtracting from that value one half of the outstanding mortgage on the Property, as follows: *(Ownership Interest ÷ 2) - (Mortgage Indebtedness ÷ 2) = Debtor's Ownership Interest in the Property.* The parties also agreed that the valuation date is to be fixed as of the bankruptcy petition date, January 27, 2005. While the Debtor's appraisal from December of 2004 is nearest in time to this date, the Creditor's appraisal dated April of 2005 does not cause a material difference in time.

**II.    Testimony of the Debtor**

The Debtor testified that she purchased the Property with her husband in June of 1999, for $154,900. The home was approximately forty years old at the time of purchase and no substantial improvements or renovations have been performed by the Stromers. The home has a kitchen that was updated roughly ten years prior to the purchase. The Debtor further testified that the fireplace has

Page 4
April 10, 2006

foundational issues and is not currently functional. In addition, one of the two bathrooms in the home has not been used since she purchased the home and was described as "old and moldy."

The Property is situated on Warwick Turnpike, a main thoroughfare also known as County Highway 515, making ingress and egress of the Property difficult during peak traffic periods. The Debtor asserts that during the morning rush hour, it may take as long as five to fifteen minutest to back out of her driveway onto the highway. The Property is located approximately 300 yards away from a firehouse, and an audible siren is heard at least once each day and whenever a fire emergency arises. Additionally, a cell tower was erected in 2004 approximately 300 yards behind the Property. Neighbors objected during its construction due to aesthetic considerations and health concerns. Geographically, the Property is situated in Upper Greenwood Lake, approximately one mile from the Lake and two miles from the Clubhouse.

During cross-examination the Debtor acknowledged there is a wooded area buffering the Property and the fire station. The Debtor also attested that the addition to the rear of the home was constructed prior to her purchase in 1999. The Debtor also stated she had occasion to review the comparable real estate analysis performed by her appraiser, but was not familiar with the square footage or interior condition of any of those residences.

### III.    Testimony of Expert Witness for the Debtor

Peter P. Klimovitch (hereinafter "*Klimovitch*") is a licensed real estate appraiser with over twenty years experience and has previously supplied testimony in similar court proceedings. The Court accepted the witness as an expert on behalf of the Debtor. Mr. Klimovitch's complete summary appraisal narrative report on the Stromer home was entered into evidence. (See Exhibit D-1). The document includes

Page 5
April 10, 2006

photographs of the interior and exterior of the Property as well as detailed commentary concerning the interior of the dwelling.

Mr. Klimovitch performed a walk-through of the Property with the Debtor's husband. The witness observed an older furnace in the basement which Mr. Stromer indicated was the original. Mr. Klimovitch described the roof as being in the last third of its economic life and the addition at the rear of the home as being in "fair repair." While Mr. Klimovitch did not note anything "new" about the interior of the home, he described the kitchen as "upgraded." With respect to the second bathroom, the witness stated only that it was "not quite functional," as "it appeared to have some problems." Mr. Klimovitch noted the exterior of the Property was painted, but no unusual work had been performed.

Additionally, Mr. Klimovitch acknowledged the Property is located on a well-traveled road with a fire station to its left, and a cell phone tower behind the residence. Mr. Klimovitch's valuation is discounted to take into account the non-functioning fireplace and bathroom.

In December of 2004 Mr. Klimovitch appraised the home at $200,000 using the sales comparison approach. The witness briefly discussed the three different valuation methods, opining that the "sales comparison analysis" is used most often in the industry and most accurately reflects the marketplace. Mr. Klimovitch's fair market value of $200,000 takes into consideration location, condition and other external factors such as local employment trends. The second method of valuation, the "income approach," is based upon a comparison of real estate selling prices to rental prices and is not frequently used. Lastly, the "cost approach" is used by Mr. Klimovitch as a check against the sales comparison figure, and involves taking the price per square foot multiplied by a home's total square footage. The appraiser then takes the value

Page 6
April 10, 2006

of what it would cost to reproduce the dwelling new, factors in age as depreciation and other obsolescence factors, and finally adds in the value of the land. In this instance, Mr. Klimovitch opined the Property could be reproduced at a cost of $208,454.

Mr. Klimovitch's appraisal originated with information obtained from the Garden State Multiple Listing Service and the details from the last sale of the Property. In 1999, the Stromer residence was listed for $159,900 and sold for $154,500 after being on the market for 101 days. The original realtor listing stated that the home had a "newer kitchen," and a "Florida room," which Mr. Klimovitch took to mean the addition in the rear of the structure. The home was also described as "charming," which, according to the witness, is a pejorative realtor comment indicating the home needed work. As part of his report, Mr. Klimovitch performed a statistical analysis which demonstrated the median selling price in and around West Milford Township at the time the Stromers purchased the Property was $163,000, and that the current median is now $264,000. The Debtor's home was therefore slightly below the average selling price of homes in the area in 1999.

Mr. Klimovitch then discussed three properties he evaluated that were in his estimation comparable to the Stromers' home (hereinafter "Debtor comparable"). The first Debtor comparable is 78 Dunham Road, which Mr. Klimovitch described as "lake proper," remodeled, located a block or two from lake access, with more square footage than the Property. This home sold for $190,000 in March of 2004. Mr. Klimovitch made allowances for differences in square footage, and a working fireplace to give this home an adjusted selling price of $196,200. The realtor's listing for 78 Dunham Road described it as a "large home" with "lots of space" and a potential corner lot. While the witness found the home comparable to the

Page 7
April 10, 2006

Property, it appeared to have more square footage, and is located on a more desirable street. There was no age indicated on this home, which the witness expressed means a home is "old." Mr. Klimovitch explained that chronological age is the actual age of the home, while the effective age reflects upgrades and remodeling over time, and that "remodeling significantly affects the value of the property." Mr. Klimovitch's report lists the effective age of the Stromer residence as being approximately fifteen years old.

The second Debtor comparable is located at 25 Florence Road, West Milford. Mr. Klimovitch stated this was the home most similar to the Debtor's residence, but with improvements that rendered it "above average" in condition. Built in 1950, the residence at 25 Florence sold for $201,000 in 2004 after being on the market for 103 days. This home originally was described as having a "new kitchen, Jacuzzi, and substantial improvements."

The third Debtor comparable, located at 676 Lakeshore Drive, is geographically closer to the lake than the Debtor's residence, and sold for $205,000 in November of 2003. This property was also noted to be in "above average" condition, while the Stromers' Property is deemed "average."

Mr. Klimovitch did look at other comparable properties but did not include them in his report for various reasons. The witness indicated it was difficult to find comparables, as most homes on the market have many more upgrades, or the style of the home differed markedly from the Property. For instance, 685 Warwick Turnpike is a home in close proximity, but is a colonial while the Stromers' home is a ranch. This home was originally listed at $209,900, but sold for $185,400 in March of 2004 after being on the market 178 days.

Page 8
April 10, 2006

Mr. Klimovitch commented on the report that the Creditor's appraiser would be utilizing in his testimony. In assessing the properties contained therein, the witness first pointed out that those appraisals are all "drive by" or "ride by" evaluations that are based solely on the exterior of a dwelling. The Creditor's appraiser had no opportunity to inspect the interior of either the Property or the comparable sale properties that were selected for his comparison. Furthermore, the comparables used by the Creditor (hereinafter "Creditor comparable") were located in "Lake Proper" within close proximity to the lake or clubhouse, and with easy access and quiet streets.

The first Creditor comparable is located at 36 Morsemere Road and was built in 1987. The home is situated close to the lake, with a Jacuzzi, office, and its sales listing described it as "updated significantly." The second Creditor comparable, also built in 1987, is located at 23 Glenridge Road, and was listed as having a hot tub, Jacuzzi, hardwood floors, a deck and a two-car heated garage. The third Creditor comparable is 36 Dunham Road. Built in 1991, it rests on a corner lot with a lake view, and an attached two-car heated garage. Mr. Klimovitch took exception to this comparable as the realtor listing described it as a "contemporary," having a master bedroom with full bath, walk-in closets, heated basement, vaulted ceilings, and cedar closets. The witness notes that while this home is on the same road as one of the Debtor's comparables (78 Dunham Road), it is not an appropriate comparison. The fourth and final Creditor comparable is located at 45 Delaware Road and was built in 2001. This home was listed for $399,000, and sold for $398,000 after being on the market for 117 days. In Mr. Klimovitch's estimation, the home is significantly updated and the realtor listing read as follows: "top of the line amenities, stainless appliances, 50-foot deck, hardwood floors, vaulted ceilings, with a stone fireplace." The home was sold

Page 9
April 10, 2006

in October of 2002 for $258,000. For the above reasons, the Creditor comparables were viewed by Mr. Klimovitch as less appropriate than the comparables he utilized.

During cross-examination, the Creditor's counsel alluded to the fact that the town records indicate Mr. Klimovitch's first comparable is only 981 square feet, roughly half of the 1,800 square feet estimated by Mr. Klimovitch. The witness concedes that this fact would alter his valuation of the Property, but on rebuttal proffered that town tax property cards can contain errors and while the gross living area contributes to a home's value, it is just one of many factors to be considered when performing an appraisal. Later testimony by the Creditor's appraiser, however, identifies that this same property - 78 Dunham Road - actually contains 1,697 square feet of living space.

Cross-examination also revealed that while anything that would materially detract from the value of a home should be in Mr. Klimovitch's appraisal, he mentioned neither the fireplace nor the problem with the second bath in his written report. Instead, he wrote that the baths were "assumed to be functional." It was also noted that neither the cell tower nor the proximity of the fire station was included in Mr. Klimovitch's written report.

### IV.    Testimony of Expert Witness for the Creditor

Michael A. Elston, employed by Medici Appraisal Services, has been an appraiser for nine years and was accepted by the Court as an expert witness for the Creditor. The Medici appraisal report was admitted into evidence (Exhibit C-1), as were two area maps delineating the location of both the Debtor's and Creditor's respective comparable properties (Exhibits C-2; C-3).

Page 10
April 10, 2006

Mr. Elston estimates the fair market value of the Stromer property to be $325,000. The witness performed a "no-contact appraisal" of the Property and four comparable properties. In this type of appraisal, only the exterior of a residence is viewed.[2] Mr. Elston admits that because he was not able to access the interior of the Property or the comparables, he was forced to make the "extraordinary assumption that the inside is equivalent to the outside." In making his valuation, Mr. Elston was aware that the Stromers' residence is located on a through-road near both a fire station and a cell tower, and he factored those items in when creating his estimate. The witness stated that he would need to make adjustments to his calculations in light of the fact that the Property does not have a deck or a working fireplace as he originally gleaned from his exterior inspection.

In choosing comparable properties for his report, Mr. Elston based his selection on properties having tax assessment values and square footage similar to the Stromer residence. The witness testified that while the town tax cards are not perfect and the tax assessed value does not always equate to fair market value, it is a more objective method than relying upon "realtor embellishments," as there has to be a legitimate reason why assessment values differ.

Mr. Elston does not use either the income or the cost approach methods of valuation, but favors the comparable sales approach. The Property has a tax assessed value of $136,300, with a land value of $44,400 and an additional $91,900 attributed to improvements. Reviewing the Debtor's first comparable, Mr. Elston noted that 78 Dunham Road contained 1,697 square feet and was assessed at $100,100, with

---

[2] It is noted that the Creditor's appraiser did not seek to inspect the interior of the Property and was not denied access for an inspection by the Debtor.

Page 11
April 10, 2006

$36,700 ascribed to land value and $63,400 to improvements. The tax assessed value of the Debtor's second comparable is $56,000, of which $25,800 is appropriated to land value and $30,800 to improvements. The Debtor's third comparable has a tax assessed value of $95,000, with $39,200 in land value and $55,800 in improvements. All four properties were assessed in 2004.

During cross-examination, Mr. Elston clarified that the oldest home he used in his comparable report had an chronological age of only eighteen years. Additionally, none of the Creditor's comparables were situated on a main road. While all of the Creditor's comparable properties had "superior" locations, 45 Delaware Road was also "superior" in condition. The Stromer property ranks as "average" in both categories. Mr. Elston stated that the difference in quality between the comparables and the Property was "partially" taken into consideration in the Medici report, and that each rating of "superior" usually equates to a $20,000 difference in the sales price. Lastly, Mr. Elston stated that from the time the Stromers purchased their home, property values in the West Milford area have increased by 14 to 22 %.

## V.     Conclusion

The experts' reports differ most significantly in that the Debtor's appraiser conducted a full appraisal of 768 Warwick Turnpike, while the Creditor's appraiser conducted only a drive-by appraisal, and did not view the interior of the home.[3] As a result, the testimony and reports differ as to several important factors, most importantly, the overall condition of the Stromers' property. The usual factors that are considered in determining the value of a property are location, lot size, square footage, condition, and age. These were

---

[3] A detailed chart reviewing and comparing the comparable sales utilized by the appraisers is annexed as Exhibit "A."

Page 12
April 10, 2006

each considered by the appraisers to the degree possible based upon the realtor listing information, tax assessor cards, and visual inspections. Age, condition and location with respect to the Property are the most significant factors in the Court's view. While both experts were found to be credible, the Court gives greater weight to Mr. Klimovitch's report, as it involved an actual physical inspection of both the interior and exterior of the Property, and included trending analysis concerning housing and employment in the West Milford area. In addition, Mr. Elston's comparable sales appear, in the Court's opinion, to be superior to the Property in a variety of ways and thus not as helpful or relevant in determining fair market value of the Property.

Both experts utilized the comparable sales approach in preparing their respective reports. Additionally, based upon data from the tax assessor and a tax ratio of 59.15%, both appraisers give the Property an imputed value of approximately $230,000 in their written findings. At the close of testimony, Mr. Elston noted an increase in property values of 14 to 22% for the period in question. Given the purchase price of $154,900 this would fail to bring the property to his $325,000 estimate by a large margin. In contrast, Mr. Klimovitch's statistical analysis showed a median increase in local property values of $101,000 over the same time period. Adding this median value to the original purchase price brings the value of the Stromer property to $255,900. According to the Medici report, an additional bathroom creates a $4,000 adjustment in sale price, and the Klimovitch report reflects a $2,500 adjustment for a fireplace. Here, the Property value will be discounted $4,000 for the non-working second bathroom, and $2,500 for the non-functioning fireplace, bringing the valuation to $249,400. The valuation of the Property, therefore, is calculated as follows:

Page 13
April 10, 2006

<u>Valuation of Debtor's Property</u>

| | |
|---|---:|
| Purchase Price as of 6/1999: | $ 154,900 |
| Median Increase in Property Values in West Milford 6/1999 - 12/2004: | + 101,000 |
| Adjustment for Non-Functioning Fireplace: | -   2,500 |
| Adjustment for Non-Working Second Bath: | <u>-   4,000</u> |
| Adjusted Value of Property as of Petition Date | <u>$249,400</u> |

In accordance with <u>In re Miller</u>, Ms. Stromer's individual ownership interest in the Property is therefore $50,062 [*(249,400 ÷ 2) - (149,276 ÷ 2) = $50,062*].

In light of the above, after reviewing the appraisal factors and comparable properties, the Court concludes that the fair market value of the Property as of the petition date, January 27, 2005, was $249,400 and the Debtor's ownership interest in the Property is $50,062.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

Very truly yours,

    **s/   Donald H. Steckroth**

    DONALD H. STECKROTH
    UNITED STATES BANKRUPTCY JUDGE

Attachments

1. Exhibit A
2. Order